**IN THE CIRCUIT COURT FOR THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIVIL DIVISION**

**FREDDY LORENZO ADAMS,**

    **Plaintiff,**

v.                                                                                              CASE NO:

**LIFE CARE CENTERS OF AMERICA, INC.
d/b/a LIFE CARE CENTER OF OCALA,**

    **Defendant.**

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, FREDDY LORENZO ADAMS, (hereinafter "Plaintiff" or "Mr. Adams"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, LIFE CARE CENTERS OF AMERICA, INC. d/b/a LIFE CARE CENTER OF OCALA (hereinafter "Defendant" or "Life Care") and alleges:

**INTRODUCTION**

1. The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on race in violation of Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA").

2. As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his race, and retaliated against him in violation of his rights under the FCRA.

3. As a direct and proximate result of unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer the loss of his professional and

personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4. Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5. This is an action for damages which exceed fifty thousand dollars ($50,000.00).

6. This is a civil action by Plaintiff against his former employer for monetary damages, declaratory relief and for other equitable relief pursuant to the Florida Civil Rights Act ("FCRA") §760.01, *et al*.

7. Venue is appropriate in Marion County under § 47.011, Florida Statutes (2016), because the events giving rise to the cause of action occurred in Marion County.

## PARTIES

8. Plaintiff is a forty-three-year-old African American male.

9. Plaintiff is a member of a class protected against discrimination based on his race under the FCRA.

10. During the period from November 7, 2022, until February 28, 2023, Defendant employed Plaintiff.

11. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable state statutes.

12. The Defendant is LIFE CARE CENTERS OF AMERICA, INC. d/b/a LIFE CARE CENTER OF OCALA, a Foreign Profit Corporation with a principal place of business located at 3570 KEITH STREET, N.W., CLEVELAND, TN 37312-4309.

13. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Marion County, Florida including their location at 2800 SW 41st St, Ocala, FL 34474, where they employed Plaintiff.

14. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable state statutes including, but not limited to, the FCRA.

15. Accordingly, Defendant is liable under the FCRA for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17. Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18. On July 3, 2023, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, race discrimination and retaliation.

19. More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is also entitled to bring his FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

21. All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

22. On November 7, 2022, Life Care hired Mr. Adams to work as a Maintenance Assistant. He reported directly to the Manager of Maintenance, Craig Tent (Caucasian), and the Manager of Housekeeping, Denise Conage (African American).

23. Mr. Adams endured discrimination and harassment daily. Mr. Adams' supervisors

forced him to participate in numerous meetings, sometimes four or five daily. During these meetings, Mr. Tent would attempt to intimidate Mr. Adams by standing near him, raising his voice, and almost physically assaulting Mr. Adams. On occasion, Mr. Adams asked permission to be excused from these meetings as he did not feel comfortable in that hostile environment. However, Mr. Tent and Ms. Conage told Mr. Adams that leaving would be considered insubordination, so he had no choice but to stay.

24. Mr. Tent repeatedly accused Mr. Adams of "stealing time," arguing that the company paid Mr. Adams for not doing his job. In response, Mr. Adams asserted that he excelled at his role, citing numerous compliments he had received for his work.

25. At one point, a fellow maintenance employee named Albert asked Ms. Conage and Mr. Tent to not be so harsh on Mr. Adams, but Albert ended up being reprimanded for coming to Mr. Adams' defense.

26. In another meeting, Mr. Adams asked his supervisors if they could keep the door open and allow him to stand at the entrance. In response, Mr. Tent quickly closed the door, nearly slamming Mr. Adams' arm in the process. Understandably upset, Mr. Adams left the office, but Mr. Tent insisted he return as he had Administrator Melissa Rahn on the phone. Mr. Tent proceeded to bash Mr. Adams' character while talking to Ms. Rahn on the phone. Mr. Tent then asked Ms. Rahn if Mr. Adams could clock out for the rest of the day. When Ms. Rahn realized that Mr. Adams was present in the room hearing everything, she asked Mr. Adams to step out of the office for a moment. A few minutes later, Ms. Rahn called Mr. Adams to tell him that he did not have to go home but that he should avoid Mr. Tent.

27. Ms. Conage took part in the discrimination against Mr. Adams as well. One time, Ms. Conage told Mr. Adams, "I am not going to allow no fucking nigger, Spanish person, or Puerto

Rican to take my job."

28. Mr. Adams' coworkers noticed the harassment he was subjected to and raised concerns about Mr. Tent and Ms. Conage.

29. Despite the company's "open door" policy of asking questions, Mr. Adams' supervisors discouraged Mr. Adams from reaching out to Ms. Rahn. They tried to convince Mr. Adams that Ms. Rahn would not want to hear from him and that it would only serve to frustrate her.

30. Mr. Adams refused to be intimidated by his supervisors and contacted HR in early February 2023 to file a complaint. In response, HR came out to the facility and asked questions regarding Mr. Adams' complaint.

31. Following HR's visit, Ms. Conage and Mr. Tent began retaliating against Mr. Adams. They would assign Mr. Adams an overwhelming number of tasks instead of dividing those tasks evenly among the team. They would also instruct Mr. Adams to complete his assignments in the same timeframe as a three-person crew. Mr. Adams tried to reason with his supervisors about his excessive workload and unrealistic deadlines, but they simply told Mr. Adams that if he did not like his job, he should just find another one.

32. On February 28, 2023, Life Care terminated Mr. Adams for allegedly neglecting to take out the trash. Mr. Tent had taken a picture of trash, sent it to Ms. Rahn, and fabricated a story that Mr. Adams had not taken out the trash that day. However, Mr. Adams always made sure to make his morning, afternoon, and before-clocking-out rounds, and February 28, 2023, was no exception. When Mr. Adams left the building on the day of his termination, Mr. Tent laughed at Mr. Adams as he passed by him.

33. Life Care later argued that Mr. Adams violated company policy by working

overtime without approval from his supervisors. However, the reason Mr. Adams worked overtime in the first place is because several employees were out sick due to COVID-19. Both Mr. Tent and Ms. Conage had explicitly told Mr. Adams that he was welcome to work extra hours considering the staff shortage. Additionally, Mr. Adams occasionally clocked in early to accommodate the extra tasks assigned to him by Ms. Conage due to the lack of staff. Ms. Conage would always forget to communicate this to Mr. Tent, who believed Mr. Adams clocked in early without permission.

34. The company also claimed that Mr. Adams was disrespectful to his co-worker Ed Hernandez, but this claim is entirely unfounded. Mr. Adams and Mr. Hernandez were good friends, so much so that in June 2023, the latter confided multiple times in Mr. Adams about his plans to resign because he did not like how Ms. Conage treated him. Moreover, Mr. Adams got along well with the rest of the staff. In fact, he often received compliments for his performance and work ethic from employees outside of his department.

35. The company further claimed that Mr. Adams missed work on February 4, 2023, and that he failed to notify his supervisors. That day, Mr. Adams had to stay home because he contracted COVID-19. While out sick, Mr. Tent asked Mr. Adams to go back to the facility to fill out some medical forms, threatening to terminate Mr. Adams if he did not comply. Mr. Adams explained to Mr. Tent that he felt so sick that he could not drive to work. However, following his recovery, Mr. Adams submitted the required medical documentation to justify his absence.

36. Lastly, the company accused Mr. Adams of washing his clothes in the industrial facility washer and of staying in the laundry room until his clothes were ready without permission. In reality, Mr. Adams asked Ms. Conage permission to wash his clothes there after confiding in her and Mr. Tent that he had lost his house and that he was living in a hotel nearby. Ms. Conage

granted Mr. Adams permission to wash his clothes if he worked in the laundry department while doing so, which is exactly what he did.

## COUNT I
## VIOLATION OF FLORIDA CIVIL RIGHTS ACT, FLORIDA STATUTES §§ 760.01-11
### Race Discrimination

37. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 36 of this Complaint as though fully set forth herein.

38. Plaintiff, a forty-three-year-old African American male., is a member of a protected class under the FCRA, §§ 760.01-760.11, Florida Statutes, by way of his race.

39. At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

40. Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

41. At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

42. The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful discrimination based on his race.

43. As his employer, Defendant was obligated to guard against the disparate treatment and discrimination of Plaintiff by his co-workers, supervisors, managers, and other agents of

Defendant and to protect Plaintiff from discrimination in the workplace.

44. Defendant violated the FCRA by, among other things, failing to promptly correct Mr. Tent and Ms. Conage's discriminatory conduct toward Plaintiff once it learned of it and by subjecting Plaintiff to discrimination because of his race.

45. Plaintiff, by being subjected to this discrimination created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

46. The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination of Plaintiff, deprived him of statutory rights under the FCRA.

47. As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE**, the Plaintiff, FREDDY LORENZO ADAMS, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, LIFE CARE CENTERS OF AMERICA, INC. d/b/a LIFE CARE CENTER OF OCALA, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

    A. Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by discriminating against Plaintiff based on his race;

B.  Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of Defendant's discrimination against him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.  Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's discriminatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.  Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.  Award Plaintiff pre- and post-judgment interest;

F.  Award Plaintiff his attorneys' fees, including litigation expenses, and the costs of this action; and

G.  Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT II
### VIOLATION OF FLORIDA CIVIL RIGHTS ACT, FLORIDA STATUTES §§ 760.01-11
#### Retaliation

48.  Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 36 of this Complaint as though fully set forth herein.

49.  Plaintiff, a forty-three-year-old African American male, is a member of a protected class under the FCRA, §§ 760.01-760.11, Florida Statutes, by way of his race.

50. At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

51. Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

52. At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

53. LIFE CARE CENTERS OF AMERICA, INC. d/b/a LIFE CARE CENTER OF OCALA subjected Plaintiff to adverse employment actions in retaliation for filing a complaint regarding Mr. Tent and Ms. Conage's discriminatory behavior by overworking him and terminating his employment.

54. The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful retaliation.

55. As his employer, Defendant was obligated to guard against the retaliation of Plaintiff by his co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from discrimination in the workplace.

56. Defendant violated the FCRA by, among other things, failing to promptly correct the retaliatory conduct toward Plaintiff once it learned of it.

57. Plaintiff, by being subjected to this retaliation created by Defendant, was

unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

58. The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the retaliation of Plaintiff, deprived him of statutory rights under the FCRA.

59. As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE**, the Plaintiff, FREDDY LORENZO ADAMS, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, LIFE CARE CENTERS OF AMERICA, INC. d/b/a LIFE CARE CENTER OF OCALA, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by retaliating against Plaintiff based on his complaint regarding discrimination by terminating his employment;

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of Defendant's retaliation against him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of

the discrimination he has endured;

      C.      Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's retaliatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

      D.      Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

      E.      Award Plaintiff pre- and post-judgment interest;

      F.      Award Plaintiff his attorneys' fees, including litigation expenses, and the costs of this action; and

      G.      Grant such other and further relief as this Court may deem equitable, just, and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 13th day of January 2024.

                                                            */s/ Jason W. Imler, Esq*
                                                            Jason W. Imler
                                                            Florida Bar No. 1004422
                                                            **Imler Law**
                                                            23110 State Road 54, Unit 407
                                                           Lutz, Florida 33549
                                                           (P): 813-553-7709
                                                           Jason@ImlerLaw.com